[No. F003387. Fifth Dist. Aug. 7, 1985.]

HAROLD E. BARNETT, Plaintiff and Respondent, v.
EILEEN LEWIS et al., Defendants and Appellants.

[No. F003388. Fifth Dist. Aug. 7, 1985.]

EILEEN LEWIS et al., Plaintiffs and Appellants, v.
HAROLD E. BARNETT, Defendant and Respondent.

Rifkind, Sterling & Levin, Craig A. Pridgen and Murray Tragish for Defendants and Appellants and Plaintiffs and Appellants.

Goldberg, Fisher & Quirk and Arthur B. Hampton for Plaintiff and Respondent and Defendant and Respondent.

## OPINION

**IVEY, J.**[*]—Appellants appeal from orders of the superior court (in case No. F003388) sustaining respondent's demurrer to their complaint and (in case No. F003387) denying their motion for the appointment of a receiver. The issues presented are which section of the Code of Civil Procedure[1]— former section 681 or newly enacted section 683.210—is applicable to the cases at bench; and whether the periods within which appellants could have renewed or enforced a judgment in their favor were tolled by respondent's petition for proceedings in bankruptcy in which he listed as his, assets properly belonging to the judgment debtor.

We find, under the facts at bench, that former section 681 is applicable and was considered properly by the trial court; and that the periods within which appellants could have renewed or enforced their judgment were not tolled.

### FACTS[2]

Case Nos. F003387 and F003388 have been consolidated on appeal because they involve the same facts and issues.

---

[*]Assigned by the Chairperson of the Judicial Council.

[1]All statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[2]The facts of these cases are closely intertwined with the procedural aspects; we therefore combine them in one section.

Southwestern Mining, Inc. (Southwestern) is a suspended California corporation formed primarily as a mining company. Eighty one and one-fourth percent of the stock was owned by V. R. Smith and eighteen and three-fourths percent of the stock was and is owned by H. E. Barnett (respondent).

On July 1, 1970, respondent petitioned the court (in case No. F003387) for court supervision of winding up proceedings of Southwestern. On October 6, 1971, the court entered its order (the original judgment) essentially providing for the sale by Southwestern of its assets, with a portion of the proceeds to be applied to satisfy a claim of V. R. Smith for $147,057.44, another portion to be held to cover a disputed claim of respondent for $27,500, and the remainder to be disbursed to the shareholders.[3]

V. R. Smith died in March of 1973. His successors in interest, Eileen Lewis (aka Segaser), Helen Mae Smith, and Raymond Smith (appellants) inherited his shares of Southwestern and succeeded to the original judgment.

Respondent continued to reside on and run the mining property. When he filed chapter 11 proceedings in bankruptcy court on July 30, 1981, respondent claimed, in his statement of financial affairs, that he was the sole owner of Southwestern Mining Co. and Gum Tree Mines which were stylized names for Southwestern.[4] Respondent continued in bankruptcy through February 15, 1983.

On March 21, 1983, appellants filed a complaint (in case No. F003388) against respondent, Southwestern, American Financial Institution and Does 1 through 100, for the renewal of the original judgment.[5] Appellants alleged that the 10-year statute of limitations for renewal of the original judgment was tolled during the period respondent was under the jurisdiction of the bankruptcy court pursuant to 11 United States Code section 362, the automatic stay provision, and that the stay applied to any state actions against respondent personally and to any action involving the assets of Southwestern, since those assets were listed in respondent's financial statement as his own. On April 15, 1983, appellants filed a motion (in case No. F003387) for the appointment of a receiver to carry out the original judgment.

Respondent demurred to the complaint and objected to the appointment of a receiver on the grounds that the complaint did not state facts sufficient

---

[3]None of the provisions of the original judgment were complied with by Southwestern, respondent or V. R. Smith or his successors in interest.

[4]The court below found that the property claimed by respondent was in fact the property of Southwestern.

[5]Respondent is the only remaining defendant on appeal.

to constitute a cause of action because the 10-year statute of limitations for execution on or renewal of the judgment had run, and respondent was not a judgment debtor in the underlying action (case No. F003387).

The court issued its tentative decision finding that the statute of limitations was not tolled, sustaining respondent's demurrer without leave to amend and denying the motion to appoint a receiver; and, after a motion for reconsideration, found that no grounds were shown to justify reconsideration of its previous rulings.

Appellants filed a timely notice of appeal.[6]

### DISCUSSION

### I.

### FORMER SECTION 681 IS APPLICABLE TO THIS CASE.

■ Respondent contends that the applicable Code of Civil Procedure sections were changed during the pendency of this action and under the new code sections appellants' position is without merit.

Former section 681 provided: "The party in whose favor judgment is given may, at any time within 10 years after the entry thereof, have a writ or order issued for the execution or enforcement of the judgment. If, after the entry of the judgment, the issuing of such writ or order is stayed or enjoined by any judgment or order of court, or by operation of law, the time during which it is so stayed or enjoined must be excluded from the computation of the 10 years within which execution or order may issue." Title IX of the Code of Civil Procedure was revamped by the Legislature in 1982. The operative date of the new statutes was July 1, 1983. (§ 694.010.)

The first sentence of former section 681 was superseded by section 683.010, which provides: "Except as otherwise provided by statute or in the judgment, a judgment is enforceable under this title upon entry." The tolling provision of former section 681 was not continued, and a new section provides: "A judgment may be renewed notwithstanding any stay of en-

---

[6]Although an order sustaining a demurrer without leave to amend is not appealable, the policy of this court is to decline to dismiss the appeal on that ground and, in the interest of justice, to hear the appeal and order the trial court to enter a judgment of dismissal nunc pro tunc and treat the notice as a notice of appeal from the judgment to be entered. (*Evola* v. *Wendt Construction Co.* (1958) 158 Cal.App.2d 658, 660 [323 P.2d 158]; *Zellers* v. *State of California* (1955) 132 Cal.App.2d 56, 57 [281 P.2d 296].)

forcement of the judgment, but the renewal of the judgment does not affect the stay of enforcement." (§ 683.210.)

Case No. F003388 was filed on March 21, 1983, and the motion for reconsideration was denied on September 6, 1983. Thus, the statutory scheme changed while the action was pending in superior court. The parties cite to numerous sections of the new code to demonstrate the legislators' intent as to which code sections are applicable to actions which were pending when the new code sections became operative; however, neither side cites to the determinative code section, section 694.020 which provides: "Except as otherwise provided in this chapter, this title on and after its operative date applies to all proceedings commenced prior thereto unless in the opinion of the court application of a particular provision of this title would substantially interfere with the effective conduct of the proceedings or the rights of the parties or other interested persons, in which case the particular provision of this title does not apply and prior law applies."

It appears from the record that the parties and the trial court were not aware of the changes in the Code of Civil Procedure at the time the instant action was heard; there was no mention of it below.

Based on the entire record, we conclude that if the court had been aware of the new code sections, it would have determined (pursuant to § 694.020) that the application of section 683.210 would have interfered substantially with the rights of the parties. The new action was commenced, and the alleged tolling of the statutes of limitations on the original judgment occurred, prior to the operative date of the new statutes. The outcome of the action was argued by the parties, and considered by the trial court, at all times to depend upon whether respondent's bankruptcy proceedings tolled the statutes of limitations. If the new code sections were applicable, that issue would be irrelevant because now the statute of limitations on enforcement is not tolled by statutory or judicial stays, and there is no question the judgment could be renewed notwithstanding any stay of enforcement.[7]

---

[7]"A judgment that has become unenforceable under the [new] law may still be renewed by an action if the 10-year statute of limitations provided by Section 337.5 has not run." (15 Cal. Law Revision Com. Rep. (1980) p. 2029, fn. 10.) Section 337.5 provides that the statute of limitations is 10 years for "[a]n action upon a judgment . . . of any state within the United States," and section 356 provides "When the commencement of an action is stayed by . . . statutory prohibition, the time of the continuance of the . . . prohibition is not part of the time limited for the commencement of the action."

II.

THE 10-YEAR STATUTES OF LIMITATIONS WERE NOT TOLLED BY RESPONDENT'S PETITION FOR PROCEEDINGS IN THE UNITED STATES BANKRUPTCY COURT

 If not tolled, the 10-year periods within which appellants had to renew or to enforce the original judgment expired during the time respondent was in bankruptcy.[8]

In its tentative decision the trial court stated: "At the risk of oversimplifying the case it appears to the Court that Barnett was the plaintiff (petitioner) in the underlying action and that his duty as an officer or fiduciary of the corporation or as a shareholder cannot turn him into a judgment debtor or a defendant for the purpose of renewing the underlying Judgment.

"The corporation was never placed in Bankruptcy Court. The estate of V. R. Smith or the distributees of his stock in Southwestern could have sued within the 10 year period to keep the Judgment alive? [*Sic.*] Also the stay, if any, because of listing the property in Barnett's bankruptcy would apply only to the bankrupt's interest and not the interest held in trust by the bankrupt. . . .

"It follows that *the statute of limitations for the enforcement of a Judgment was not tolled.* The motion to appoint a receiver is denied. In view of this ruling the question of substituting the Successors in Interest in as the Real Party in Interest is moot. [Italics added.]

"Also as a result of this ruling the demurrer in case No. [F003388] must be sustained without leave to amend." The court attempted to clarify its position when it denied the motion for reconsideration:

"The moving parties, successors to V. R. Smith, have made their motions based on CCP section 681 and the Court's rulings are limited thereto. Further the Court is not at odds with the moving parties as to whether the automatic stay pursuant to the Bankruptcy Laws of the United States would

---

[8]The trial judge noted in his tentative decision: "The demurrer in [Case No. F003388] will stand or fall on the decision made in the underlying matter of appointment of a receiver in [Case No. F003387]." This was not necessarily correct even under the law which we deem applicable here. The 10-year period under section 681 ran from the entry of judgment; the 10-year period under section 337.5 did not (and does not) begin to run until the judgment is final. There is, however, nothing in the record to indicate that the statute for each purpose had not run.

prevent enforcement. I agree that only one Court can have jurisdiction of the assets. (Emphasis added.)[9]

"However, the foregoing does not excuse the moving parties from renewing the judgment within the 10 year period, i.e., the claiming of bankruptcy by Barnett who was <u>not</u> a judgment debtor in the underlying case . . ., even though he claimed property not his own in his personal bankruptcy proceedings, does not stay the running of the 10 year Statute of Limitations. The moving parties could and should have sued Southwestern Mining, Inc. to renew <u>and enforce the judgment within the 10 year period.</u>" (Final emphasis added.)

11 United States Code section 362, the automatic stay provision in the bankruptcy code, provides in pertinent part: ". . . [A] petition filed under . . . this title . . . operates as a stay, applicable to all entities, of [¶] (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [¶] (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; [¶] (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [¶] (4) any act to create, perfect, or enforce any lien against property of the estate; [¶] (5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title; [¶] (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title; [and] [¶] (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor . . . ."

In view of the meaning of "property of the estate" in the bankruptcy code, the only subdivisions of 11 United States Code section 362(a) that could have any possible application here are (1) and (3).[10]

---

[9]Appellants urge that the underlined sentence indicates that the trial judge had changed his mind and was now holding that *enforcement* of the original judgment *was* barred by the automatic stay provision. This interpretation is questionable in view of the underlined words in the last sentence of the next paragraph; but, in any event, we do not agree that either the right to enforce or the right to renew was stayed.

[10]What constitutes property of the estate is described and limited in 11 United States Code section 541. That section provides in pertinent part: "(a) The commencement of a case under . . . this title creates an estate. Such estate is comprised of all the following property,

■ The purpose of 11 United States Code section 362 is to protect the assets of the *debtor.* "It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." (*Foulke* v. *Lavelle* (1982) 308 Pa.Super. 131 [454 A.2d 56, 59].)

■ "The automatic stay provisions apply to proceedings against the debtor, the debtor's property, and the property of the estate, but they do not apply to acts against property which is neither the debtor's nor the estate's." (*Ibid.*) "Section 362(a)(1) applies by its terms only to, *inter alia,* proceedings to recover a claim against the debtor that arose *before* the commencement of the Chapter 11 case." (*Shell Pipe Line Corp.* v. *West Texas Marketing Corp.* (S.D. Tex. 1982) 540 F.Supp. 1155, 1161; final italics added.)

■ The original judgment, which appellants are now trying to renew, was against Southwestern—the corporation. ■ "It is fundamental . . . that a 'corporation is a distinct legal entity separate from its stockholders and from its officers.'" (*Merco Constr. Engineers, Inc.* v. *Municipal Court* (1978) 21 Cal.3d 724, 729 [147 Cal.Rptr. 631, 581 P.2d 636].) "The shareholders are not in any proper sense the owners of the corporate property and the whole title is in the corporation." (*Baker Divide Mining Co.* v. *Maxfield* (1948) 83 Cal.App.2d 241, 248 [188 P.2d 538].) ■ And an action to renew the judgment would not have been a direct attempt to *collect,* even from the corporation.[11]

---

wherever located: [¶] (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. [¶] [] [¶] (6) Proceeds, product, offspring, rents, and profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case. [¶] (7) Any interest in property that the estate acquires after the commencement of the case. [¶] (b) Property of the estate does not include any power that the debtor may only exercise solely for the benefit of an entity other than the debtor. [¶] [] [¶] (d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. [¶] (e) The estate shall have the benefit of any defense available to the debtor as against an entity other than the estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses. A waiver of any such defense by the debtor after the commencement of the case does not bind the estate."

[11]Where "the focus of the [action in the nonbankruptcy court] is relief other than the actual collection of a debt, the judicial proceeding need not be stayed because the order of [that] court will not interfere with the bankruptcy proceedings." (*Marine Midland Bank* v. *Herriott* (1980) 10 Mass.App. 743 [412 N.E.2d 908, 910].)

Appellants contend that they have "a right to enforce the original judgment against the respondent-debtor" and that they could not do so because of the automatic stay, which prevented them from engaging in any acts to obtain possession of the property of the bankruptcy estate or property which respondent claimed as part of that estate.

The corporation was not the bankruptcy debtor.[12] The fact that respondent is a shareholder in the corporation and underwent bankruptcy proceedings had no effect on property held by the corporation. ▉ "It is well established that the automatic stay does not enjoin actions against entities that have not filed a petition under the Bankruptcy Code." (*In re Bell & Beckwith* (1984) 39 B.R. 914, 917-918.)[13]

In *In re Hall* (1981) 8 B.R. 239 the debtor (Hall) was the principal officer and controlling party of the corporation known as His Girl, Inc. The corporation rented its store from the plaintiff. The corporation defaulted in its obligations and a judgment was entered against the corporation *and* Hall. The sheriff levied upon the corporation's property pursuant to the plaintiff's judgment. After the sheriff's levy, but before the sale, Hall removed most of the inventory and equipment of the corporation and transfered them to a store he operated as a sole proprietorship. Thereafter, Hall filed a petition to adjust his debts under chapter 13 of the Bankruptcy Code.[14]

The plaintiff filed a complaint in the bankruptcy court requesting, inter alia, an order granting it relief from the automatic stay provided under 11 United States Code section 362(a), and a temporary restraining order to prevent Hall from disposing of the goods. After a hearing at which Hall and his attorney did not appear, the temporary restraining order was granted.

At the trial, Hall "testified that, pursuant to the temporary restraining order, he had segregated the inventory of the corporation from the inventory owned by him. . . ." (*Id.*, at p. 241.) The court found "[T]he property which the plaintiff seeks to have relieved from the automatic stay was never the debtor's property and is not property of his estate. . . . Since there is no . . . evidence that the property against which the plaintiff asserts its claim and from which it seeks relief from the automatic stay was ever or is now

---

[12]And, as the trial court noted, respondent is not the judgment debtor; calling him "the respondent-debtor" cannot create rights against him.

[13]For instance, the automatic stay does not prohibit a creditor from asserting a claim against a surety, guarantor or co-debtor. (*In re Smith* (1981) 14 B.R. 956.)

[14]The opinion does not indicate specifically whether Hall's statement of financial affairs listed the corporation's assets; however, in view of Hall's testimony (see quote, *infra*) and the court's findings, we conclude it must have.

the property of the debtor or the debtor's estate, *it is clear that the relief sought under § 362(d) is inapplicable.*" (*Id.,* at p. 242; italics added.)

 The property which appellants claim was subject to the automatic stay was—like the property in *In re Hall*—neither the debtor's property nor property of the debtor's estate. Appellants should have attempted to enforce the judgment against Southwestern within the 10-year period and, if time became a factor, they should have brought an action to renew the judgment. These actions would not have been barred by respondent's bankruptcy proceedings because Southwestern was not the entity in bankruptcy.[15]

Nor was respondent an indispensable party to any action against Southwestern to enforce or renew the judgment, as appellants contend. Appellants rely upon the following quote to support their position that respondent would have been an indispensable party: "There may be some persons whose interests, rights, or duties will inevitably be affected by any decree which can be rendered in the action. Typical are the situations *where a number of persons have undetermined interests in the same property . . . and one of them seeks, in an action, to recover the whole, to fix his share, or to recover a portion claimed by him.* The other persons with similar interests are indispensable parties. The reason is that a judgment in favor of one claimant for part of the property or fund would necessarily determine the amount or extent which remains available to the others." (*Bank of California* v. *Superior Court* (1940) 16 Cal.2d 516, 521 [106 P.2d 879]; italics added.) Respondent was not indispensable because the interests in Southwestern were not undetermined; the original judgment had already determined the interests of the parties.

We recognize that respondent's claim against Southwestern for $27,500 is still disputed; this fact, however, did not make him an indispensable party

---

[15]The apparently contradictory statement by Collier that: "The stay reaches . . . property that does not belong to the estate or debtor but which is in the possession of the estate," citing *In re Barksdale* (1981) 15 B.R. 731, (2 Collier, Bankruptcy Manual (3d ed. 1979) § 362.03 [3] and fn. 60a, p. 362-13), is explained by the facts in *Barksdale* and distinguishable by a comparison of those facts with the situation at bench.

In *Barksdale,* a creditor sought to foreclose on real property which was "owned of record by . . . [a] daughter of the Debtors." However, the foreclosure proceeding had as its purpose the "collecting [of a debt] of the debtors from the proceeds of the foreclosure upon the real estate in question and, despite the fact that the Debtors occupied the premises with a possessory right." The bankruptcy court held: "From the foregoing, it appears to the Court that the foreclosure proceedings had as its purpose the collection and satisfaction of a debt owing by the Debtors and prohibited by the provisions of § 362. The foreclosure, therefore, was void and of no effect."

Unlike the creditor in *Barksdale,* appellants were not creditors of respondent; did not have to attempt to collect anything from, or relating to, him; and had to make no claim against respondent to renew the original judgment. And respondent did not occupy the corporation's "premises with a possessory right."

to an action to *renew* the judgment; we find no authority which holds that *one* judgment creditor cannot bring an action on a judgment. And in any action to *enforce* the judgment, respondent would have been a *claimant*, as to whom 11 United States Code section 362 would have had no application. The bankruptcy court—had it known that the original judgment created a contingent claim which was an asset of the bankruptcy estate—probably would have taken steps to insure proof of the claim and for enforcement of the judgment, rather than insisting on a stay of such enforcement.

Although respondent certainly complicated matters by listing the assets of Southwestern as his own in bankruptcy court, this did not result in a stay of all action on the original judgment. Even if it is assumed the corporation's property was *custodia legis* as a result of its listing in the statement of financial affairs, appellants, prior to the running of the statutes, could have taken the identical steps in the superior court that they took after respondent's petition was dismissed.

■■■■ A request for the appointment of a receiver would not have been barred by any provision of 11 United States Code section 362(a) and, after his appointment, a receiver could have moved in the bankruptcy court to obtain "possession of . . . property from the estate."[16] ■ The trial court held that the property listed in respondent's bankruptcy petition was owned by Southwestern and was not property of the bankruptcy estate. We conclude that the bankruptcy court would have reached the same decision had a receiver (or appellants) petitioned that court to release Southwestern's property.

An action to renew the judgment, under section 337.5, would not have been barred by any provision of 11 United States Code section 362(a), nor would it have been barred even if appellants could not have executed on the corporation's property at that time. ■ "Whether or not one is entitled to enforce an existing judgment does not affect his right to maintain an action brought to obtain a new judgment." (*164 East 72nd Street Corp.* v. *Ismay* (1944) 65 Cal.App.2d 574, 576 [151 P.2d 29].)

■ Nor were actions in the superior court the only avenues open to appellants. Appellants represent that respondent voluntarily dismissed his chapter 11 proceeding after they moved to intervene in the bankruptcy court,[17] and this statement is not challenged by respondent. The record is

---

[16] "[A]nyone who considers himself better entitled to the possession of particular property than the bankruptcy receiver or trustee [or debtor] may apply to the court to have such property released to him.'" (*In re Hall, supra,* 8 B.R. 239. Also see *White* v. *Schloerb* (1900) 178 U.S. 542 [44 L.Ed. 1183, 20 S.Ct. 1007].)

[17] The form of this intervention was not revealed.

silent as to what steps were taken—and when—by appellants with regard to respondent's bankruptcy. We do know that the chapter 11 proceeding was dismissed on February 15, 1983—more than 18 months after it was filed—and we infer from the record that appellants did not take steps to intervene until shortly before that date.[18]

Furthermore, assuming, contrary to the holding in *In re Hall, supra,* that appellants needed relief from the stay, 11 United States Code section 362(d) provides that, on the request "of a party in interest . . . the court shall grant relief from the stay." And, 11 United States Code section 362(e)[19] provides that the stay *automatically* terminates 30 days after the request is made unless the court (after notice and a hearing) orders the stay continued pending a final hearing and determination under 11 United States Code section 362(d).

Since apparently within weeks after appellants moved to intervene, respondent abandoned his bankruptcy proceedings, and since, had appellants requested relief in the bankruptcy court, the stay could have been terminated in as short a period as 30 days, it would appear that timely action by appellants in the bankruptcy court, after respondent commenced the proceedings there, could have resolved all of these problems *before* the 10-year periods of sections 337.5 and 681 expired.

The trial court was correct in treating any claim appellants might have against respondent personally as separate and distinct from their rights against the corporation. While appellants might pursue a separate course of action against respondent for claiming the property of Southwestern as his

---

[18]In a declaration, dated April 13, 1983, filed with the motion for appointment of receiver in case No. F003387, co-counsel for appellants declared: "[I]n *October and November of 1982,* my clients approached the undersigned by and through [other co-counsel] *to investigate the basis* of [respondent's] Chapter 11 Proceedings. [¶] . . . In my investigations, I *found out* that [respondent] had filed a Chapter 11 Proceeding in the [bankruptcy court] on July 30, 1981. . . . [¶] . . . *In reading over the Statement of Financial Affairs* for [respondent], *[respondent] stated* under penalty of perjury *that he was the owner* of Southwestern Mining Company and Gum Tree Mine *and it [sic] was a sole proprietorship* owned by himself and his wife . . . ." (Italics added.)

In a declaration, dated April 7, 1983, filed with the same motion, a private investigator declared: "I had a telephone conversation on *December 10, 1982* with [one of the appellants], wherein *he requested that I ascertain if the Southwestern . . . millsite, claims and assets were presently being operated by [respondent]*" (italics added), and that on *January 4, 1983* and *January 5 or 6, 1983,* he investigated, at the millsite and by telephone, the operation of the mill.

[19]11 United States Code section 362(e) provides in pertinent part: "Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending, or as a result of, a final hearing and determination under subsection (d) of this section. . . ."

own, any such action is separate from appellants' actions to renew or to enforce the original judgment against Southwestern.

The judgment is affirmed. The trial court is directed to enter a judgment of dismissal nunc pro tunc as of the earliest date it legally could have been entered.

Franson, Acting P. J., and Woolpert, J., concurred.